UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARL ASHLEY,

        Plaintiff,                             Civil Action No. 11-10603

        v.                                   Hon. Gerald E. Rosen
                                          Magistrate Judge Laurie J. Michelson

DENNIS CRANE et al.,

        Defendants.
_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS
GIDLEY, MULLINS, AND NEWMAN'S MOTION TO DISMISS [13] AND
ORDER DENYING PLAINTIFF'S MOTION TO AMEND [22]**

      Plaintiff Carl Ashley, a Michigan Department of Corrections ("MDOC") inmate proceeding *pro se*, brought this civil-rights suit against current (or former) MDOC employees Dennis Crane, Geraldine Wilson, Katherine Corrigan, Lori Gidley, David Bergh, Michael Mullins, Becky Newman, Dennis Straub, and Patricia Caruso. (Dkt. 1, Compl. ¶¶ 3-11.) Plaintiff asserts that Defendants violated his First Amendment rights by transferring him to another facility in retaliation for filing a (different) lawsuit and/or for filing grievances against certain Defendants. (Compl. ¶¶ 17, 19, 36-37.) Presently before the Court for Report and Recommendation (*see* Dkts. 15, 25) is Defendants Gidley, Mullins and Newman's Rule 12(b)(6) Motion to Dismiss (Dkt. 13). Before this Court for disposition is Plaintiff's Motion for Leave to Amend. (Dkt. 22, Pl.'s Mot. to Amend; *see also* Dkt. 23, Proposed Am. Compl.)

      For the following reasons, this Court RECOMMENDS that Defendant Newman, Mullins, and Gidley's Motion to Dismiss (Dkt. 13) be GRANTED and that those Defendants be DISMISSED on the basis of qualified immunity. Further, Plaintiff's Motion to Amend will be DENIED.

**I. BACKGROUND**[1]

The events giving rise to this suit occurred while Plaintiff was an inmate at Thumb Correctional Facility ("TCF") in Lapeer, Michigan. (*See* Compl. ¶¶ 2, 6, 8, 9.)

On or around February 3, 2010, Plaintiff filed a different civil-rights suit, *Ashley v. Wilson* ("*Ashley I*"), No. 10-cv-10512 (E.D. Mich.), against Defendants Crane, Wilson, and Corrigan. (Compl. ¶ 13). After Plaintiff filed that suit, Defendant Crane, in accordance with MDOC policy, scanned Plaintiff's legal materials only to learn that he, along with Defendants Wilson and Corrigan, was the subject of Plaintiff's suit. (Compl. ¶¶ 14-16.)

On February 12, 2010, Plaintiff sent a letter to Defendant Caruso, MDOC Director, requesting that the Michigan Attorney General forgo representation of Crane, Wilson, or Corrigan in *Ashley I*. (Compl. ¶ 17.) The letter also notified Caruso that Defendant Bergh would be added as a defendant in that case. (Compl. ¶ 17.) Plaintiff further requested that Caruso place a "hold" to prevent his transfer to another facility. A copy of this letter was sent to Crane, Wilson, Corrigan, and Bergh. (Compl. ¶ 18.)

On February 23, 2010, Plaintiff filed a prison grievance against Defendant Newman, a TCF Quartermaster, "for policy violations involving Quartermaster issues." (Compl. ¶¶ 9, 19.) About a week later, on March 2, 2010, Plaintiff had an incident with Newman during a quartermaster "callout." In particular, Newman was "agitated" with Plaintiff and began yelling at him because Plaintiff had filed a grievance against her. (Compl. ¶ 20.) Newman also refused to issue clothing items to Plaintiff. (Compl. ¶ 22.) In response, Plaintiff reported Newman's behavior to a unit officer

---

[1]For purposes of Defendants' Rule 12(b)(6) motion, this Court accepts as true the factual allegations in Plaintiff's Complaint and presents them here as if they are fact.

who in turn reported the incident to Defendant Wilson. (Compl. ¶ 21.) Wilson apparently spoke with Newman, and then informed Plaintiff that Newman would not issue the clothing. (*See* Compl. ¶ 22.) Eventually, Newman's immediate supervisor had to issue the clothing items. (Compl. ¶ 23.) That same day, Plaintiff notified Defendant Mullins, a TCF Inspector responsible for investigating staff, of the incident with Newman. (Compl. ¶¶ 8, 24.)

The next day, March 3, 2010, Newman told Plaintiff that "I'm having you transferred to Jackson. Write a grievance on that." (Compl. ¶ 25.) Plaintiff immediately filed a second grievance against Newman, this time regarding Newman's transfer threat, and sent a second letter to Mullins informing him of this new incident with Newman. (Compl. ¶ 26.)

On March 4, 2010, Plaintiff was scheduled for a transfer to Jackson, Michigan. (Compl. ¶ 28.) However, Mullins stopped the transfer, and instead, Plaintiff's roommate was transferred to Jackson. (Compl. ¶ 28; *see also* Dkt. 19, Pl.'s Resp. to Mot. Summ. J. at 3.) But it appears that on March 5, 2010, after Mullins finished investigating the "Quartermaster incident," Mullins "authorized" Plaintiff's transfer from TCF to the Saginaw Correctional Facility ("SRF") in Freeland, Michigan. (Compl. ¶ 29.)[2] Defendant Gidley, a TCF Deputy Warden, "approved and signed Plaintiff's transfer order." (Compl. ¶¶ 32.) Plaintiff further asserts that Gidley "knew or should have known" that TCF staff were retaliating against Plaintiff. (Compl. ¶ 33.)

On March 14, 2010, Plaintiff sent a letter to Defendant Straub, Deputy Director of MDOC, "notifying him of the actions of [TCF] [s]taff and requesting him to correct the violations." (Compl. ¶ 34.)

---

[2]SRF is located about 70 miles northwest of TCF. *See* MDOC, Prisons, http://www.michigan.gov/corrections/ 0,4551,7-119-1381_1385---,00.html (last visited September 19, 2011).

3

In sum, Plaintiff's (initial) Complaint alleges that he had been resident at TCF from 1999 until his transfer to SRF in March 2010, that he had "never received misconduct reports of any kind," that he "was a model prisoner," and that the only relevant change in his behavior was the filing of *Ashley I* and the March 2010 grievance. (Compl. ¶ 31.) It follows, Plaintiff claims, that Defendants "[d]enied Plaintiff his First Amendment right to seek redress of grievances and to access the courts." (Compl. ¶ 36.)

## II. PROCEDURAL HISTORY

On March 4, 2011, the District Court issued an Opinion and Order of Partial Summary Dismissal of Plaintiff's Complaint. (Dkt. 6, Op. of Partial Summ. Dismissal.) That Opinion dismissed with prejudice "Plaintiff's denial of access to the courts claim, as well as his claims against defendants Crane, Wilson, Corrigan, Bergh, Straub, and Caruso, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b)." (Op. of Partial Summ. Dismissal at 6.) The District Court further concluded, however, that Defendants Newman, Mullins, and Gidley were "not subject to summary dismissal at this time." (*Id.*)

Accordingly, on May 6, 2011, the three remaining Defendants – Newman, Mullins, and Gidley – moved to dismiss Plaintiff's First Amendment retaliation claim. (Dkt. 13, Def.'s Mot. to Dismiss.) Plaintiff filed a Response on June 3, 2011. (Dkt. 19.)

On September 21, 2011, this Court issued a Report and Recommendation to deny Newman, Mullins, and Gidley's Motion to Dismiss. (Dkt. 20, Report and Recommendation.) This Court believed that as to Defendants' argument that Plaintiff's Complaint failed to state a claim upon which relief may be granted, the District Court had already found in its Opinion of Partial Summary Dismissal that Plaintiff had adequately pled a First Amendment retaliation claim against Newman,

4

Mullins, and Gidley. (Report and Recommendation at 5-8.) However, this Court neglected to address Defendants' qualified immunity argument. Accordingly, Defendants objected to the District Court that

> with respect to the retaliation claim, Defendants raised the specific issue that as a matter of law, a lateral transfer is not an adverse action. This issue overlaps with the issue of qualified immunity, since the first prong of the qualified immunity analysis is to determine whether there was a constitutional violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Arguably, this inquiry was made at screening when [the District Court] allowed the complaint to be served as to the retaliation claim. But the second prong of the qualified immunity analysis is whether the law was clearly established. *Saucier*, *supra*. This issue was not previously addressed by [the District Court].

(Dkt. 21, Def.'s Obj. to Report and Recommendation at 3-4.)

On November 21, 2011, the District Court sustained Defendants' objections, reasoning,

> Though at the initial screening stage, the Court found that Plaintiff *pled* sufficient facts in his complaint to state a claim of retaliatory transfer – *i.e.*, that he engaged in protected conduct by filing a civil rights complaint and grievance; that those defendants took an adverse action against him by transferring him to another prison; and that the transfer decision was based, at least in part, on his protected activity – in their motion to dismiss Defendants raised the issue that a lateral transfer is not an "adverse action" as a matter of law. The question of whether a lateral transfer is sufficient to establish a legally cognizable "adverse action" for purposes of making out a constitutional retaliation claim was not addressed in the Court's Order of Partial Summary Dismissal. But even if the Court had at least implicitly decided this question, there is certainly no discussion in the initial screening Order as to whether the law was "clearly established."

(Dkt. 24, Order of Remand at 2-3.)

Accordingly, Defendants' Motion to Dismiss (Dkt. 13) has been remanded to this Court "for consideration of the merits of Defendants' Motion, including Defendants' claim of qualified

5

immunity." (Order of Remand at 3.)

### III. DEFENDANTS' MOTION TO DISMISS

"The defense of qualified immunity shields government officials from 'liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Humphrey v. Mabry*, 482 F.3d 840, 846 (6th Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Moreover, qualified immunity is not only a defense to liability but also immunity from suit. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). And this protection applies "regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, 555 U.S. at 232 (internal quotation marks and citation omitted).

This Court makes the following two-part inquiry in determining qualified immunity: "(1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Estate of Carter v. City of Detroit*, 408 F.3d 305, 310 (6th Cir. 2005) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). At this stage of the litigation, Plaintiff's well-pled factual allegations are accepted as true, "and the test is whether, reading the complaint in the light most favorable to the plaintiff, it is plausible that an official's acts violated the plaintiff's clearly established constitutional right." *Heyne v. Metropolitan Nashville Public Schools*, 655 F.3d 556, 563 (6th Cir. 2011) (citations omitted). "Once raised, the plaintiff bears the burden of showing that a defendant is not entitled to qualified immunity." *Bletz v. Gribble*, 641 F.3d 743, 750 (6th Cir. 2011).

In determining whether a right is clearly established, the dispositive inquiry "is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."

*Saucier*, 533 U.S. at 202; *see also Thacker v. City of Columbus*, 328 F.3d 244, 260 (6th Cir. 2003) ("Qualified immunity will protect all but 'the plainly incompetent or those who knowingly violate the law.'" (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986))). A court considers the alleged right "at a relatively high level of specificity." *Cope v. Heltsley*, 128 F.3d 452, 458 (6th Cir. 1997). In particular,

> [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Further, this Court "look[s] first to decisions of the Supreme Court, then to decisions of [the Sixth Circuit Court of Appeals] and other courts within our circuit, and finally to decisions of other circuits" in deciding whether the law is clearly established. *Key v. Grayson*, 179 F.3d 996, 999-1000 (6th Cir. 1999).

Confined to the allegations set forth in the original Complaint – and drawing reasonable inferences, but not speculating, in Plaintiff's favor – the Court finds that Defendants Newman, Mullins, and Gidley's alleged conduct of transferring Plaintiff from TCF in Lapeer, Michigan to SRF in Freeland, Michigan in retaliation for Plaintiff's filing a civil-rights complaint and/or grievance(s) did not violate clearly established federal law at the time of Plaintiff's transfer in March 2010.[3]

---

[3] Under *Saucier*, courts were required to address whether a constitutional right had been violated before asking whether the right was clearly established; the Supreme Court has since relaxed this requirement. *See Pearson*, 555 U.S. at 236 ("On reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

A First Amendment retaliation claim essentially consists of three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Regarding the "adverse action" element, the Sixth Circuit has explained "that while certain threats or deprivations are so *de minimis* that they do not rise to the level of being constitutional violations, this threshold is intended to weed out only inconsequential actions, and is not a means whereby solely egregious retaliatory acts are allowed to proceed past summary judgment." *Id.* at 701. Generally, however, a mere prison transfer – without something more – is the type of *de minimis* deprivation that would not deter a prisoner of ordinary firmness from exercising his First Amendment rights. *See Jones v. Caruso*, 421 F. App'x 550, 553 (6th Cir. 2011) ("[G]enerally, a transfer to another institution 'does not constitute an adverse action . . . .' As such, an alleged retaliatory transfer ordinarily 'should be characterized as *de minimis* and dismissed at the summary judgment stage.'" (quoting *Siggers-El v. Barlow*, 412 F.3d 693, 704 (6th Cir. 2005)); *Siggers-El*, 412 F.3d at 701 ("Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct."); *Smith v. Yarrow*, 78 F. App'x 529, 543 (6th Cir. 2003) ("We have repeatedly held that transfer from one prison to another prison 'cannot rise to the level of an "adverse action" because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights.'" (collecting unpublished Sixth Circuit cases)).

Instead, a prisoner must plead (and ultimately prove) that there were "foreseeable, negative consequences" that are "inextricably" bound to the transfer:

> [W]e [have] carved out an exception for cases in which foreseeable, negative consequences "inextricably follow" from the transfer . . . . In these exceptional cases, "'[w]hether a retaliatory action is sufficiently severe to deter a person of ordinary firmness from exercising his or her rights is a question of fact.'" Thus, to survive summary judgment on his retaliation claim, [Plaintiff] needed to "make a sufficient showing[,]" of the foreseeable, negative consequences that "inextricably follow[ed]" from his transfer.

*Jones*, 421 F. App'x at 553 (internal citations omitted).

A review of the Complaint and Plaintiff's Response to Defendants' Motion to Dismiss does not reveal any alleged adverse consequences from Plaintiff's transfer from TCF in Lapeer, Michigan to SRF in Freeland, Michigan. And assuming some negative consequences from the transfer, the Complaint does not assert that any such consequences "inextricably followed" from Defendants' act of transferring Plaintiff to SRF. Nor does Plaintiff's Complaint provide that any inescapable, adverse consequences were reasonably foreseeable to Defendants Newman, Mullins, and Gidley.[4] Thus, taking all the allegations in Plaintiff's Complaint as true, and reading Plaintiff's Complaint

---

[4]Plaintiff asserts that Newman's threat of transfer to Jackson is sufficient. (Pl.'s Resp. to Defs.' Mot. Dismiss at 3.) But again, "A transfer or *threat to transfer* constitutes an adverse action only where the transfer will result in foreseeable negative consequences, such as more restrictive living conditions or impeding access to courts." *Herrerra v. Michigan Dept. of Corrections*, No. 5:10–CV–11215, 2011 WL 3862640, at *17 (E.D. Mich. July 22, 2011) (emphasis added) *report and recommendation adopted by* 2011 WL 3862390 (E.D. Mich. Sept. 1, 2011); *see also Pasley v. Conerly*, 345 F. App'x 981, 985 (6th Cir. 2009) ("[Plaintiff] alleges that after he mentioned the possibility of filing a grievance, [Defendant] Conerly made two immediate threats: first, to have him moved out of the unit so that he would lose his job and, second, to use her influence with a warden to have him moved to a location where his family would not be able to visit him. These threats could be 'capable of deterring a person of ordinary firmness' from exercising protected rights, the standard for adverse action set forth in *Thaddeus-X*. . . . [A] mere threat is actionable *if it otherwise* meets the standard that it would deter a person of ordinary firmness from engaging in a protected activity." (emphasis added)).

9

in the light most favorable to Plaintiff, the Complaint asserts that a mere transfer from TCF to SRF would deter a person of ordinary firmness from continuing to engage in protected conduct. But this was not "clearly established" federal law when Plaintiff was transferred. *See Dye v. DeAngelo*, No. 09-14545, 2010 WL 4982925, at *5-6 (E.D. Mich. Nov. 4, 2010) *report adopted by* 2010 WL 4976936 (E.D. Mich. Dec. 2, 2010) (finding that defendants were entitled to a qualified immunity defense against a First Amendment retaliation claim under the clearly-established prong where defendants allegedly transferred the plaintiff from a facility in Detroit, Michigan to a facility in Lapeer, Michigan at the same security level, and the plaintiff did not allege that the defendants were aware of ongoing legal proceedings or that the transfer would hinder plaintiff's ability to pay his pro bono attorney); *cf. Siggers-El*, 412 F.3d at 702, 703-04 (finding defendant not entitled to qualified immunity for retaliatory transfer to another facility that resulted in the loss of prisoner-plaintiff's "high paying job" and made it more difficulty for the plaintiff's attorney to visit; "In this case, we hold that a reasonable officer would certainly know that a retaliatory transfer for a prisoner's exercise of his right to access the courts *which inhibits the prisoner's ability to access the courts* would deter a person of ordinary firmness from continuing to engage in the protected conduct." (emphasis added)). Accordingly, Defendants Newman, Mullins, and Gidley are entitled to the defense of qualified immunity and this Court recommends that Plaintiff's Complaint against Defendants Newman, Mullins, and Gidley be dismissed.[5]

---

[5]In their Motion to Dismiss, Defendants also argue that Plaintiff failed to adequately plead a First Amendment retaliation claim. This Court's prior Report and Recommendation (Dkt. 20) addressed that issue and Defendants did not appear to object to that portion of the prior Report. The Court therefore finds it unnecessary to revisit that issue. Should the District Court disagree with this Court's qualified immunity analysis and conclude that Defendants are not now entitled to that defense, this Court would renew its prior recommendation that the District Court deny Defendants' Motion to Dismiss (on the failure to adequately plead issue).

**IV. PLAINTIFF'S MOTION TO AMEND**

As noted, before this Court for disposition is Plaintiff's Motion to Amend. (Dkt. 22, Pl.'s Mot. to Amend; *see also* Dkt. 23, Proposed Am. Compl.) Plaintiff seeks to supplement his original Complaint with a number of allegations of negative consequences as a result of Defendants' alleged retaliatory transfer. (*See* Proposed Am. Compl.)

Although Fed. R. Civ. P. 15(a)(2) provides that "[t]he court should freely give leave when justice so requires," "leave may be denied on the basis of undue delay, bad faith by the moving party, repeated failure to cure defects by previously-allowed amendments, futility of the proposed new claim, or undue prejudice to the opposing party." *Lipa v. Asset Acceptance, LLC*, 572 F. Supp. 2d 841, 853 (E.D. Mich. 2008) (citations omitted). Regarding futility, "if the district court concludes that 'the pleading as amended could not withstand a motion to dismiss,' the court may deny the motion to amend, thereby saving the parties and the court the expense of having to confront a claim doomed to failure from the onset." *Id.* (quoting *Head v. Jellico Housing Authority*, 870 F.2d 1117, 1123 (6th Cir. 1989)).

In his Proposed Amended Complaint (Dkt. 23) Plaintiff asserts that as a result of being placed in the Chippewa Correctional Facility ("URF") in Kincheloe, Michigan, he is now hundreds of miles away from his family. (Proposed Am. Compl. ¶ 37.) Plaintiff further states that he has only had one visit from his wife since the transfer to URF and that his daughter and grandchildren cannot visit because of the increased travel burdens to URF as compared to TCF. (*Id.* ¶¶ 39-40.) Next, Plaintiff asserts that URF staff have confiscated and retained Plaintiff's typewriter. (*Id.* ¶¶ 42-48.) Third, Plaintiff claims that URF has higher "statistics for violence" than TCF. (*Id.* ¶¶ 49-50.) In sum, Plaintiff's Proposed Amended Complaint pleads that "Plaintiff's retaliatory transfer from TCF

has resulted in placement in a facility with a higher rate of violence, loss of family visits[,] . . . loss of property, and [Plaintiff] must remain in the higher violence prone distant prison for at least two years before being allowed to transfer to a facility and rebuild his family." (*Id.* ¶ 53.)

Accepting, without deciding, that Plaintiff has alleged the requisite negative consequences, the Proposed Amended Complaint does not plead facts regarding the foreseeability and proximate cause aspects of a First Amendment retaliation claim. As explained by the Court of Appeals in considering a hypothetical about the "adverse action" element,

> [I]f the Plaintiff had been assaulted at the prison he were transferred to, the Defendant contends, then he could have attributed even this event to the Defendant. The Defendant overstates his argument. Only those consequences that inextricably follow from a defendant's alleged retaliatory conduct (a transfer from filling out a transfer screen, for instance) would be considered in determining whether the plaintiff suffered an adverse action. Similarly, a court may consider the reasonably foreseeable consequences that would follow from a retaliatory act in considering whether the plaintiff suffered an adverse action. However, a defendant would not be held responsible for consequences unless his conduct were the proximate cause of them (which would not be the case in the defendant's above hypothetical).

*See Siggers-El v. Barlow*, 412 F.3d 693, 702 (6th Cir. 2005).

Accepting as true the alleged negative consequences caused by Plaintiff's transfer to *URF, in Kincheloe, Michigan*, the Proposed Amended Complaint fails to address the fact that Plaintiff accuses Defendants of a retaliatory transfer from TCF to *SRF in Freeland, Michigan*, (Compl. ¶ 29). Indeed, the Proposed Amended Complaint asserts that Plaintiff was not transferred to URF until November 3, 2010 (Proposed Am. Compl. ¶ 38), while the original Complaint asserts a transfer to SRF on March 5, 2010 (Compl. ¶¶ 29, 31). Thus, it appears that Plaintiff resided at SRF for eight months prior to a second transfer to URF. Given the time gap and the second transfer, this Court

would have to speculate to conclude that the negative consequences alleged to have occurred at URF "inextricably followed" from Defendant Newman, Mullins, and Gidley's transfer of Plaintiff from TCF to SRF – any number of intervening events during Plaintiff's stay at SRF could have proximately caused Plaintiff's subsequent transfer to URF. Similarly, the Court would have to speculate to conclude that the adverse consequences at URF were reasonably foreseeable to Defendants when they transferred him to an entirely different facility some eight months earlier. But this level of speculation is an improper means of curing the pleading deficiencies in Plaintiff's original Complaint as supplemented by the Proposed Amended Complaint. *See Burnett v. Hall*, No. 3:11–0279, 2011 WL 4436515, at *2 (M.D. Tenn. Sept. 22, 2011) *report adopted by* 2011 WL 5102446 (M.D. Tenn. Oct 27, 2011) ("When the non-conclusory facts suggest two possible conclusions, one of which is alleged by the complaint but the other of which is more plausible, a court may dismiss the complaint for failing to cross the plausibility line." (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009))).

Accordingly, none of the allegations in Plaintiff's Proposed Amended Complaint adequately explain the factual deficiencies in the original Complaint justifying Defendant Newman, Mullins, and Gidley's qualified immunity defense. Granting Plaintiff's Motion to Amend would therefore be futile.

## V. RECOMMENDATION AND ORDER

For the foregoing reasons, this Court RECOMMENDS that Defendant Newman, Mullins, and Gidley's Motion to Dismiss (Dkt. 13) be GRANTED and that those Defendants be DISMISSED

on the basis of qualified immunity.[6]

Further, this Court DENIES Plaintiff's Motion for Leave to Amend.

## VI. FILING OBJECTIONS TO THIS REPORT

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006) (internal quotation marks omitted); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this magistrate judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. E.D. Mich. LR 72.1(d)(3), (4).

Regarding this Court's Order on Plaintiff's Motion to Amend, the attention of the parties is

---

[6]Because Plaintiff has sued Defendants in their individual capacity (Dkt. 6, Op. of Partial Summ. Dismissal at 1), a defense of qualified immunity warrants dismissal of Defendants Newman, Mullins, and Gidley. Plaintiff also seeks declaratory and injunctive relief, however. (*See* Compl. at 1-2, 8.) Because Defendants' conduct was in their role as MDOC officers, and injunctive relief would preclude their future conduct in that role, such relief is inappropriate. *See Cmty. Mental Health Servs. of Belmont v. Mental Health & Recovery Bd.*, 150 F. App'x 389, 401 (6th Cir. 2005) ("Just as a plaintiff cannot sue a defendant in his official capacity for money damages, a plaintiff should not be able to sue a defendant in his individual capacity for an injunction in situations in which the injunction relates only to the official's job, i.e., his official capacity.").

drawn to Fed. R. Civ. P. 72(a), which provides a period of fourteen days from the date of receipt of a copy of this order to file objections for consideration by the district judge under 28 U.S.C. § 636(b)(1).

                          s/Laurie J. Michelson
                          HON. LAURIE J. MICHELSON
                          UNITED STATES MAGISTRATE JUDGE

Dated: December 7, 2011

*Certificate of Service*

*I hereby certify that a copy of the foregoing document was mailed to the parties of record on December 7, 2011, by electronic and/or ordinary mail. Copy mailed to Plaintiff as follows:*
Carl Ashley #136985
Chippewa Correctional Facility
4269 W. M-80
Kincheloe, MI 49784

                          *s/Barbara M. Radke*
                          *Judicial Assistant*